E-FILED
Tuesday, 30 June, 2015 03:41:59 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE EASY LIFE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-03031-RM-TSH |
| | ) | |
| v. | ) | |
| | ) | |
| GODADDY OPERATING COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## GODADDY'S MOTION TO COMPEL

GoDaddy moves pursuant to Rule 37(a)(3)(B) to compel The Easy Life to provide discovery about Easy Life's **use** of the IT'S GO TIME trademark — a mark that Easy Life never registered, but for which Easy Life claims rights arising from its **use** of the mark. Specifically, GoDaddy seeks Easy Life customer information, which is central to Easy Life's claim of use, yet Easy Life continues to refuse to provide it. Pursuant to Rule 37, GoDaddy conferred with Easy Life's counsel in a good faith, but unsuccessful, attempt to resolve differences, including a telephone conference between Nicole Murray and Mark Suri on June 4, 2015. A copy of the parties' correspondence is attached hereto as Exhibit A.

### Background

Since its founding in 1997, GoDaddy's mission has been "to fight the good fight for the go getter… the small business owner… or anyone who labors for the love of it and wants the benefits of the latest technology without having to be an expert." *See* Press Release Announcing Launch of GoDaddy's IT'S GO TIME mark, attached hereto as Exhibit B. In September 2013, after months of preparation, GoDaddy launched a new brand strategy directed to its "GoGetter"

1

small businesses: "'*It's go time*' is a comprehensive company-wide messaging transformation … sharply focused on helping small businesses effortlessly leverage the power of the Internet." (emphasis in original). *Id*. Shortly after GoDaddy introduced its new mark, Easy Life wrote GoDaddy alleging that Easy Life had superior rights in the mark, and demanding that GoDaddy cease using the mark. GoDaddy responded, denying Easy Life's allegations and requesting additional information about Easy Life's use of the mark. Easy Life never responded and, thinking the matter settled, GoDaddy continued use of its mark. GoDaddy promoted its business under the mark through an extensive and successful advertising campaign, which included two Super Bowl ads. Then, over a year after Easy Life's first letter, and after spending millions of dollars advertising its new tagline, GoDaddy received a second letter from Easy Life parroting the allegations of the first. GoDaddy again denied Easy Life's claims, and again requested information about Easy Life's use of the mark. Instead of providing information about its use of the mark, Easy Life filed this suit.

The parties are now in the midst of discovery and GoDaddy has again sought information about the specifics of Easy Life's use of the IT'S GO TIME mark.[1] Because Easy Life never registered the mark, Easy Life has the burden of proving that its actual use of the mark resulted in recognition of IT'S GO TIME as a trademark of Easy Life; that is, that the mark has secondary meaning among Easy Life customers and prospective customers. *See* Complaint ¶¶ 7-8; *see also* ¶ 10 ("[t]his mark has significant secondary meaning in connection with [Easy Life's] services"). GoDaddy seeks to discover the specifics of Easy Life's use of the mark, including the customers to whom Easy Life has directed that use. Yet, Easy Life has refused to identify its customers or provide any customer-related information. GoDaddy offered to treat customer-related information as "attorneys-eyes-only," and even agreed to give Easy Life advance notice

---

[1] Copies of GoDaddy's discovery requests as answered by Easy Life are attached hereto as Exhibit C.

before contacting any of Easy Life's customers (even though it is under no obligation to do so). Still, Easy Life refuses to provide GoDaddy with the requested information, despite its obvious relevance.

## Discussion

Easy Life has refused to provide any discovery that would disclose the identity of its customers. Yet, Easy Life's rights in the IT'S GO TIME mark — if it has any — arise only from its use of the mark with customers and prospective customers. GoDaddy is entitled to discovery of Easy Life's use of the mark, including the customers with whom it has used the mark. Easy Life has refused to provide that discovery. Specifically, Easy Life has refused to respond to the following requests:

- Request No. 17: All documents relating to the first use of Plaintiff's Mark in each state, municipality or other geographic area in which Plaintiff has used Plaintiff's Mark.

- Request No. 18: All documents evidencing each state, municipality or other geographic area in which Plaintiff has used Plaintiff's Mark.

- Request No. 38: Documents sufficient to identify the geographic territories in which Plaintiff's Services are sold in connection with Plaintiff's Mark.

- Request No. 45: Distribution lists sufficient to identify the recipient of each newsletter distributed by Plaintiff bearing Plaintiff's Mark.

- Request No. 48: Documents sufficient to identify all present and former customers of Plaintiff.

Easy Life has also refused to identify customers in response to Interrogatory No. 6:

- Identify and describe all goods and/or services for which Plaintiff has ever used Plaintiff's Mark, and for each good or service state the date of first use and identify the customers to whom the goods or services have been offered or sold.

**I.     GoDaddy's requests seek relevant, discoverable information.**

GoDaddy's requests seek to discover Easy Life's use of the IT'S GO TIME mark. Without a federal trademark registration, any rights that Easy Life has in the mark arise entirely

3

from use. And Easy Life's claim of rights superior to GoDaddy's hinges entirely on who first used and established secondary meaning in the mark in the markets relevant to this litigation.

When the asserted mark is unregistered, as here, the territorial scope of rights "is not unlimited." *Brandt Indus., Ltd. Pitonyak Mach. Corp.*, No. 10–cv–0857, 2012 WL 3777145, *2 (S.D. Ind. Aug. 29, 2012); *citing and quoting Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415-16 (1916) (the proprietor of a trademark cannot monopolize markets that his trade has never reached "since it is the trade, and not the mark that is to be protected, a trademark . . . extends to every market where the trader's goods have become **known** and **identified by his use of the mark**." (emphasis added)). Easy Life asserts superior, national rights in the mark. Complaint ¶¶ 7-9; 26. To assess that claim, GoDaddy is entitled to discover Easy Life's use of the mark throughout the United States.

GoDaddy is entitled to discover not only where Easy Life has used the mark but also the extent to which Easy Life's services "have become known and identified by [its] use of the mark." *Hanover*, 240 U.S. at 415-16. "[T]o be protected under the Lanham Act, a mark must also be 'used in a way sufficiently public to identify or distinguish the marked goods [or services] in an appropriate segment of the public mind as those of the adopter of the mark.'" *Lopez v. Gap*, 883 F.Supp.2d 400, 414-15, (S.D.N.Y. 2012) (internal citation omitted). Evidence of secondary meaning may include customer testimony and surveys as well as "[c]ircumstantial evidence [such as] exclusivity, length and manner of use; amount and manner of advertising; amount of sales and number of customers; established place in the market and proof of intentional copying." *FASA Corp. v. Playmates Toys Inc.*, 912 F. Supp. 1124, 1150 (N.D. Ill. 1996). Here, the identity of Easy Life's customers is both relevant and likely to lead to the discovery of admissible evidence regarding secondary meaning and Easy Life's claim of rights

in the mark. This is especially true given Easy Life's claim in its complaint that the "mark has significant secondary meaning in connection with [Easy Life's] services." Complaint ¶ 11. Since Easy Life plead that its mark has acquired secondary meaning, GoDaddy is entitled to discovery related to that claim.

Customer information is also relevant to the likelihood of confusion analysis. *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 441(N.D. Ill. 2006). In *Autotech*, the court ordered the identification of customers. *Id*. The court explained that parties often prove "the existence-or non-existence of actual confusion [] through surveys" (internal citations omitted). *Id*. And "such surveys must target the relevant customer (or potential customer) group" (internal citations omitted). *Id*. "The requirement that surveys be directed to the relevant group makes lists of actual or potential customers relevant" (internal citations omitted). *Id.* Moreover, identification of specific customers is appropriate when a party has alleged that there has already been actual confusion between the parties' use of the marks. *Fryer v. Brown*, No. 04-5481, 2005 WL 1677940, at *4 (W.D. Wash. July, 15, 2005). Here, Easy Life alleged that customers have been actually confused by the parties' use of the marks. Complaint ¶ 23. Accordingly, all information related to that confusion, including identification of Easy Life's customers, is discoverable. *Fryer*, 2005 WL 1677940, at *4.

**II.     Customer information is discoverable in trademark cases.**

Not only is customer information, including the identity of customers relevant, it is discoverable in trademark infringement litigation. *Tory Burch LLC v. Creative Eyewear, Inc.*, No. 12 CIV. 7422, 2013 WL 1294561, at *1 (S.D.N.Y. Apr. 1, 2013) (granting motion to compel production of customer lists); *Scandaglia v. TransUnion Interactive, Inc.*, No. 09 C 2121, 2010 WL 317518, at *4 (N.D. Ill. Jan. 21, 2010) (granting the Plaintiffs' motion to compel and

instructing Defendants to turnover documents in its possession that relate to the types or classes of customers); *Autotech*, 235 F.R.D. at 439. (finding identification of customers relevant to trademark defenses and ordering production of customer list on an attorney's eyes only basis); *see also Fryer*, 2005 WL 1677940, at *4. (ordering the plaintiff to produce customer lists due to the plaintiff's allegations of actual confusion); *Asch/Grossbardt Inc. v. Asher Jewelry Co.,* No. 02 Civ. 5914, 2003 WL 660833, at *2–3 (S.D.N.Y. Feb. 28, 2003) (reversing the magistrate judge's refusal to compel the plaintiff the plaintiff to produce its customer list on the grounds that such information is relevant to the issues of actual and likely confusion); *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 84 (S.D. Ohio 1981) (compelling production of identities of customers in accordance with the parties' protective order). Indeed, "the key issue often is not whether the information will be disclosed, but under what conditions is should be disclosed" (internal citations and quotations omitted). *Tory Burch*, 2013 WL 1294561, at *1. In *Tory Burch,* the plaintiff sought information regarding the defendant's customers to explore the issue of likelihood of confusion. The court granted plaintiff's motion to compel and found:

> [i]n reaching that determination, the court must balance the risk of economic harm to the producing party against the requesting party's need for the information. The proper balance can be struck here by requiring that the requested information be disclosed on an attorneys'-eyes-only basis and used only for purposes of the instant litigation, with these conditions subject to modification by agreement of the parties or by further order of the Court.

*Id.* (internal citation omitted).

## Conclusion

GoDaddy is entitled to discovery related to Easy Life claims of both priority and ownership of the mark. Customer related information, including identification of Easy Life's customers, is both relevant and likely to lead to the discovery of admissible evidence about those

claims.  GoDaddy therefore requests that this Court compel Easy Life to respond to Request for Production Nos. 17, 18, 38, 45, and 48, and supplement its response to Interrogatory No. 6, including by the identification of Easy Life customers.

Dated: June 30, 2015                                          Respectfully submitted,


                                               *s/ Nicole M. Murray*
                                           Nicole M. Murray
                                           Richard W. Young
                                           Matthew T. Ingersoll
                                           QUARLES & BRADY LLP
                                           300 North LaSalle Street, Suite 4000
                                           Chicago, Illinois  60654
                                           Telephone:  (312) 715-5000
                                           Facsimile:  (312) 715-5155
                                           Nicole.Murray@quarles.com
                                           Richard.Young@quarles.com
                                           Matthew.Ingersoll@quarles.com

                                           *Attorneys for Go Daddy Operating Company, LLC*

## CERTIFICATE OF SERVICE

The undersigned states that a copy of the foregoing was served upon

>Mark K. Suri
>Hinshaw & Culbertson LLP
>222 North LaSalle Street, Suite 300
>Chicago, Illinois 60601
>*Attorney for The Easy Life*

via the Court's ECF System, this 30th day of June, 2015.

>*s/ Nicole M. Murray*